**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**


| | | |
|---|---|---|
| **DRERAN CRAIG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17−cv–0363−MJR** |
| | ) | |
| **WEXFORD HEALTH SOURCES,INC.,** | ) | |
| **TROST,** | ) | |
| **WALLS,** | ) | |
| **JOHN DOE #1,** | ) | |
| **JOHN BALDWIN, and** | | |
| **ILLINOIS DEPARTMENT OF** | | |
| **CORRECTIONS** | | |
| | | |
| **Defendants.** | | |


<u>**MEMORANDUM AND ORDER**</u>

**REAGAN, Chief District Judge:**

Plaintiff Dreran Craig, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff requests injunctive relief and damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

Plaintiff alleges that he has been incarcerated in unconstitutional conditions of confinement. Specifically, he alleges that Menard Correctional Center is old and run down. (Doc. 1, p. 6). Plaintiff has been housed in a cell that was designed to house only 1 person, but due to overcrowding at Menard, 2 inmates are sharing the cell. (Doc. 1, p. 6, 17). Only 1 inmate can be on the floor in these cells at a time, meaning the other inmate must remain on their bunk. *Id*. Plaintiff has been unable to exercise in his cell. *Id*. As a result of the lack of exercise, Plaintiff's back and knees hurt. (Doc. 1, pp. 6-7, 17). Additionally, there is no ladder to the top bunk, and jumping off the top bunk also puts strain on Plaintiff's back and knees. (Doc. 1, p. 7). Plaintiff does not always get his hour of daily mandated exercise outside the cell. *Id*. In addition to the pain in his back and knees, Plaintiff believes the cell condition also causes

headaches and depression. *Id.* Despite his back and knee pain, Plaintiff has never been called to sick call to address these issues. (Doc. 1, p. 17). Plaintiff alleges that he attempted to raise the issue of his back and knee pain during a visit to health care, but was told that the health care staff would only address a single issue per visit. (Doc. 1, p. 18).

Menard also lacks an adequate ventilation system, which causes Plaintiff's cell to be cold in the winter and hot in the summer. (Doc. 1, p. 8). There are cracks and holes in the ceiling and walls that allow cold drafts in the cell block. *Id.* One of the cracks is right by the shower area, subjecting Plaintiff to cold temperatures when he's wet. *Id.* Plaintiff also alleges that he is not given adequate cleaning supplies for his cell. *Id.* He also believes the inmates' shower is not being thoroughly cleaned. (Doc. 1, p. 9). Plaintiff also objects to the fact that laundry only happens once a week. *Id.* When another inmate flushes his toilet, the waste pops up in Plaintiff's toilet. (Doc. 1, p. 10). Sometimes the water coming out of his sink smells like sewage. *Id.* Plaintiff believes all of these conditions are unnecessarily exposing him to germs and illnesses and believe he may have gotten a rash from these conditions. (Doc. 1, pp. 8-10).

The light in Plaintiff's cell is also very dim. (Doc. 1, p. 10). Plaintiff has begun experiencing blurred and diminished vision, which he attributes to the bad lighting. (Doc. 1, p. 11). Plaintiff has submitted 7 request slips to see the eye doctor, but has been told that there is only 1 eye doctor for 3,700 inmates. *Id.* Plaintiff has been placed on a waiting list; at the time of his complaint, he had been waiting more than 6 months without being seen. *Id.*

Plaintiff alleges that Wexford Health Sources, Inc., has a policy of understaffing prison medical positions in order to save money, despite knowing that this causes inmates to suffer. (Doc. 1, pp. 11-12). Plaintiff specifically alleges that Trost and Walls are responsible for hiring the "right" number of staff. (Doc. 1, pp. 12-13, 18). Plaintiff also alleges that the medical staff's

policy of only addressing a single medical issue at a time has delayed health care for his eye sight. (Doc. 1, p. 12). Plaintiff also alleges that Wexford has a policy of refusing to send inmates out to a specialist for treatment due to cost concerns. (Doc. 1, p. 13). He specifically alleges that this policy prevented him from receiving needed medical care for a rash he developed. *Id.* As a result of this policy, John Doe #1 and Baldwin are not fulfilling their duty to inmates to provide them with the basic necessities of life. (Doc. 1, p. 14). Doe and Baldwin are aware of Wexford's unconstitutional policies and turn a blind eye. (Doc. 1, p. 15). They are also failing to supervise the staff in charge of medical care. *Id.*

Plaintiff further alleges that Trost and Walls are responsible for hearing inmate complaints regarding medical care, but regularly fail to address such complaints. (Doc. 1, p. 13).

Plaintiff attached a number of grievances and kites to his Complaint. Most of them address the rash on his leg. (Doc. 1, pp. 21-32). The last grievance attached to the Complaint addresses the conditions of Plaintiff's cell. (Doc. 1, pp. 33-34).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 4 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

**Count 1 –** Doe #1 was deliberately indifferent to Plaintiff's conditions of confinement in violation of the Eighth Amendment;

**Count 2 –** Doe #1, Trost, Baldwin, and Walls, were deliberately indifferent to Plaintiff's rash in violation of the Eighth Amendment when they failed to responds to grievances and kites requesting medical care;

**Count 3 –** Wexford, Doe #1, Trost, Walls, and Baldwin had unconstitutional policies that demonstrated deliberate indifference to Plaintiff's rash, blurry vision, and back and knee pain in violation of Plaintiff's Eight Amendment rights,

specifically: 1) policy of understaffing the health department; 2) refusing to make outside referrals to specialists due to cost concerns; and 3) refusing to address more than one medical issue per visit.

Plaintiff has also attempted to bring another Count, but for the reasons elucidated below, this claim does not survive threshold review.

**Count 4 –** Walls and Trost failed to adequately respond to Plaintiff's grievances and kites

As to Plaintiff's **Count 1**, the Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results "in the denial of 'the minimal civilized measure of life's necessities,' " and (2) where prison officials are deliberately indifferent to this state of affairs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Prisons must have adequate ventilation, sanitation, bedding, and hygiene products. *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987).

Prison officials demonstrate deliberate indifference when they "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn . . . and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here Plaintiff has alleged that he has been subjected to an overly-small cell, a lack of exercise, cold drafts, insufficient cleaning supplies, and a generally unhygienic environment. He has further alleged that he submitted an emergency grievance to the Warden (John Doe #1) about those conditions; the grievance is attached to the Complaint. At this stage, Plaintiff has adequately alleged that he was subjected to a serious deprivation in that the combination of the conditions he suffered from plausibly deprives him of the minimal civilized measure of life's necessities. Plaintiff's grievance also establishes that the Warden may have been aware of the

facts surrounding Plaintiff's confinement and refused to intervene. That is sufficient for an Eighth Amendment violation at the pleading stages, and **Count 1** will be permitted to proceed.

As to **Count 2**, prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he 1) suffered from an objectively serious medical condition; and 2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). An objectively serious condition includes an ailment that has been "diagnosed by a physician as mandating treatment," one that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The subjective element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eight Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Deliberate indifference may also be shown where medical providers persist in a course of treatment known

to be ineffective. *Berry v. Peterman*, 604 F.3d 435, 441-42 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

Here Plaintiff has alleged that he suffered from a persistent and itchy rash and that some people told him the rash looked like MRSA, a serious infection. Plaintiff also alleges that he suffered from chronic discomfort as a result of the rash. On these facts, the Court finds it plausible that Plaintiff has suffered from a serious medical need.

Further, Plaintiff has alleged that he attempted to secure medical care for the rash on multiple occasions, but no one took it seriously. He also specifically alleges that he sent grievances and kites to Doe #1, Trost, Baldwin, and Walls regarding the rash, and they all failed to act or respond. This is sufficient to adequately plead that the Defendants were deliberately indifferent and Plaintiff's **Count 2** shall be allowed to proceed.

In **Count 3**, Plaintiff has raised claims under a *Monell* theory of liability. For purposes of § 1983, the courts treat "a private corporation acting under color of state law as though it were a municipal entity," *Jackson v. Ill. Medi–Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002), so Wexford will be treated as a municipal entity for this suit. "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002) (*quoting Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)).

Here Plaintiff has pointed to 3 policies of Wexford's that he alleges violated his Eighth Amendment rights. First, that Wexford understaffed the health care unit when it provided 1 optometrist for 3700 inmates, which has caused Plaintiff to wait to seek treatment for his blurred vision. It is far from established that Plaintiff's blurry vision constitutes a serious medical need,

but for the purposes of 1915A review, the Court is willing to accept that it is. Additionally, Plaintiff's allegation that his care has been delayed due to the policy because understaffing the optometrist position causes long delays in securing appointments is plausible. Plaintiff has further alleged that Baldwin and Doe were aware of the unconstitutional policies but turned a blind eye to them. This is a sufficient allegation against Baldwin and Doe #1, and Plaintiff's claim for the first policy will be permitted to proceed against them. Plaintiff has also alleged that Trost and Walls actually implemented the policy at issue when they failed to adequately staff the health care unit. If Trost and Walls actually had the authority to determine staffing levels, Plaintiff's allegations against them would be adequate to state a claim. Therefore this claim will also proceed against them.

Plaintiff has not alleged that Walls and Trost[1] were responsible for either of the other policies at issue: the failure to permit inmates to raise other medical issues during appointments and the refusal to refer to an outside specialist. The claims as to those policies proceed only against Wexford, Doe #1, and Baldwin. Plaintiff has alleged that there were many delays in seeking treatment for his back and knee problems, and that those delays occurred due to a policy that prevented him from raising the issue in other medical visits. He also alleges the same with regards to his vision problems. Although the allegations as to the delays are vague, at this stage the Court will allow the claim to proceed on the grounds that the delays caused Plaintiff pain and suffering.

As to the third policy, Plaintiff has alleged that his rash was not adequately treated because he needed a referral to an outside specialist, and he was not given a referral due to cost

---

[1] Plaintiff's complaint also alleges that Trost and Walls are failing to supervise their staff, but this is a respondeat superior theory of liability and as such, not cognizable under § 1983. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions).

concerns. Plaintiff will also be allowed to proceed on this theory because he has alleged that the failure to refer him caused him to continuing to experience itchiness and discomfort. Plaintiff has stated a viable claim for 3 unconstitutional policies in **Count 3**.

But **Count 4** must be dismissed with prejudice. Plaintiff alleges that Walls and Trost failed to respond to his grievances and kites. While failure to respond to grievances may demonstrate personal involvement in the conduct at issue, *Perez v. Fenoglio*, 92 F.3d 768, 781-82 (7th Cir. 2015), it is not an independent basis for liability. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Plaintiff has no independent claim for the failure to respond to grievances against Walls and Trost; to the extent that their failure to respond demonstrates that they knew of Plaintiff's serious medical need and turned a blind eye, that claim is encompassed in **Count 2**. **Count 4** is therefore dismissed as legally frivolous.

Plaintiff has also attempted to name the Illinois Department of Corrections as a defendant, although Plaintiff has not listed that entity in his statement of claim. Plaintiff cannot maintain his suit against the Illinois Department of Corrections, because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of

Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same). Plaintiff has included John Baldwin, as Director of the Illinois Department of Corrections in his *Monell* claim; he is the proper defendant and the Illinois Department of Corrections will be dismissed with prejudice.

Plaintiff's Complaint specifically states that he is bringing claims against all individual defendants in both their official and individual capacities. (Doc. 1, p. 20). Those individuals are not "persons" in their official capacities under § 1983 for the purposes of this suit. Plaintiff can only bring claims against individuals that were personally involved in the deprivation of which he complains. There is no supervisory liability in a § 1983 action; thus to be held individually liable, a defendant must be "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Therefore, to the extent that Plaintiff has attempted to bring claims against any defendant in their official capacity, those claims must be dismissed, with one exception.

The only time it is appropriate to name a defendant in his or her official capacity is when a plaintiff seeks injunctive relief. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). In that case, a plaintiff need not allege any specific involvement and it is irrelevant whether the party participated in the alleged violations. *Id.* (citing *Houston v. Sheahan*, 62 F.3d 902, 903 (7th Cir. 1995); *Ogden v. United States*, 758 F.2d 1168, 1177 (7th Cir. 1985)). Plaintiff has sought injunctive relief here. The appropriate party for injunctive relief as to Plaintiff's medical claims and his conditions of confinement claims is the current Warden of Menard, Jacqueline Lashbrook. Plaintiff has also requested a transfer, so as to that request, John Baldwin, in his

official capacity as the Director of the IDOC is the appropriate defendant. Plaintiff's claims against Trost, Walls, and Doe #1[2] proceed against them only in their individual capacities.

Finally, Plaintiff has requested injunctive relief as part of his claim. There is no indication in the Complaint that Plaintiff wishes to seek a preliminary injunction; he does not use those terms or otherwise request an interim court order. Plaintiff's description of his current status is vague, and there is nothing to suggest that he is in imminent danger of serious harm. The Court therefore, has not construed Plaintiff's request for injunctive relief as a request for a preliminary injunction. Should Plaintiff wish to seek a preliminary injunction, he should file a motion on that point.

### Pending Motions

Plaintiff's Motion to Appoint Counsel will be referred to Magistrate Judge Stephen C. Williams for disposition. (Doc. 2).

### Disposition

**IT IS HEREBY ORDERED** that **Counts 1-3** survive threshold review. **Count 4** is **DISMISSED with prejudice** for being legally frivolous. The Illinois Department of Corrections is also **DISMISSED with prejudice** as an improper defendant. The Clerk of Court is **DIRECTED** to add Jacqueline Lashbrook to the case in her official capacity only as Warden of Menard.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Wexford, Trost, Walls, Baldwin, and Lashbrook: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's

---

[2] Assuming Doe #1 is not Jacqueline Lashbrook.

place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on John Doe #1 until such time as Plaintiff has identified him or her by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the

full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 2, 2017**

**s/MICHAEL J. REAGAN**
**Chief U.S. District Judge**